UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER PEREZ,<br><br>               Plaintiff,<br><br>     v.<br><br>CPL. BECK, *et al*.,<br><br>               Defendants. | Case No. 1:25-cv-00162-HBK (PC)<br><br>ORDER TO ASSIGN A DISTRICT JUDGE<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS CASE[1]<br><br>(Doc. No. 15)<br><br>FOURTEEN-DAY OBJECTION PERIOD |

      Pending before the Court for screening under 28 U.S.C. § 1915A is the pro se civil rights Second Amended Complaint filed under 42 U.S.C. § 1983 by Christopher Perez—a pretrial detainee. (Doc. No. 15, "SAC"). For the reasons set forth below, the undersigned recommends the district court dismiss the SAC because it fails to state any cognizable federal claim.

**SCREENING REQUIREMENT**

      A plaintiff who commences an action while in prison is subject to the Prison Litigation Reform Act ("PLRA"), which requires, *inter alia*, the court to screen a complaint that seeks relief against a governmental entity, its officers, or its employees before directing service upon any defendant. 28 U.S.C. § 1915A. This requires the court to identify any cognizable claims and dismiss the complaint, or any portion, if is frivolous or malicious, if it fails to state a claim upon

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2023).

1 | which relief may be granted, or if it seeks monetary relief from a defendant who is immune from
2 | such relief. *See* 28 U.S.C. §§ 1915A(b)(1), (2).

3 |     At the screening stage, the court accepts the factual allegations in the complaint as true,
4 | construes the complaint liberally, and resolves all doubts in the plaintiff's favor. *Jenkins v.*
5 | *McKeithen*, 395 U.S. 411, 421 (1969); *Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir.
6 | 2003). A court does not have to accept as true conclusory allegations, unreasonable inferences, or
7 | unwarranted deductions of fact. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.
8 | 1981). Critical to evaluating a constitutional claim is whether it has an arguable legal and factual
9 | basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989).

10 |     The Federal Rules of Civil Procedure require only that a complaint include "a short and
11 | plain statement of the claim showing the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).
12 | Nonetheless, a claim must be facially plausible to survive screening. This requires sufficient
13 | factual detail to allow the court to reasonably infer that each named defendant is liable for the
14 | misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Moss v. U.S. Secret Service*,
15 | 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not
16 | sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.
17 | *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969. Although detailed factual allegations are not
18 | required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory
19 | statements, do not suffice," *Iqbal*, 556 U.S. at 678 (citations omitted), and courts "are not required
20 | to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir.
21 | 2009) (internal quotation marks and citation omitted).

22 |     If an otherwise deficient pleading can be remedied by alleging other facts, a *pro se* litigant
23 | is entitled to an opportunity to amend their complaint before dismissal of the action. *See Lopez v.*
24 | *Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc); *Lucas v. Department of Corr.*, 66 F.3d
25 | 245, 248 (9th Cir. 1995). However, it is not the role of the court to advise a *pro se* litigant on
26 | how to cure the defects. Such advice "would undermine district judges' role as impartial
27 | decisionmakers." *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *see also Lopez*, 203 F.3d at 1131
28 | n.13. Furthermore, the court in its discretion may deny leave to amend due to "undue delay, bad

1  faith or dilatory motive of the part of the movant, [or] repeated failure to cure deficiencies by
2  amendments previously allowed . . . ." *Carvalho v. Equifax Info. Srvs., LLC*, 629 F.3d 876, 892
3  (9th Cir. 2010).

### BACKGROUND AND SUMMARY OF OPERATIVE COMPLAINT

Plaintiff, proceeding pro se and *in forma pauperis*, initiated this action by filing a civil rights complaint under 42 U.S.C. § 1983. (Doc. Nos. 1, 4). On February 26, 2025, the undersigned screened Plaintiff's complaint and found that it failed to state any cognizable constitutional claim related to the jail's failure to provide a chair or some other safety apparatus to assist Plaintiff in ascending to his upper bunk bed bunk. (*See* Doc. No. 7). The Court advised Plaintiff of the pleading deficiencies and applicable law, and afforded Plaintiff an opportunity to file an amended complaint. (*Id.*).

On May 27, 2025, Plaintiff filed a First Amended Complaint. (Doc. No. 13). On June 25, 2025, the undersigned screened the amended complaint and found that it failed to state a cognizable constitutional claim related to Plaintiff's fall from the upper bunk or a medical deliberate indifference claim for treatment related to the injuries he sustained from his fall. (Doc. No. 14). The Court afforded Plaintiff "a final opportunity to file an amended complaint or to voluntarily dismiss the operative complaint before it recommends that the district court dismiss this action." (*Id.* at 1). On July 31, 2025, Plaintiff filed the SAC. (Doc. No. 15).

The events giving rise to the SAC occurred while Plaintiff was a pretrial detainee housed at the Madera County Department of Corrections. (*Id.* at 1). He contends that the named Defendants—Madera County and its officials, Sheriff Tyson Pogue, Sgt. Townsend, Cpl. Beck, and Officers Williams and Yrigoyen—acted with deliberate indifference by maintaining unsafe bunk designs and removing plastic chairs used to access top bunks. (*Id.* at 3–4, 9–10, 13–18). The SAC sets forth the following facts, which are presumed true at this stage of the proceedings.

On January 4, 2025, Plaintiff fell while attempting to climb into a top bunk in Module "M," Dorm 2, which lacked steps, ladders, or other safe access, causing injuries to his knees, legs, back, and head. (*Id.* at 3). A month prior, Sgt. Townsend emailed staff directing the removal of chairs from Module "M" on November 29, 2024. (*Id.* at 3, 9, 14, 17). Officers Williams and

Yrigoyen carried out the order despite Plaintiff's objections. (*Id*.). Cpl. Beck enforced Townsend's email directive and failed to report or correct the conditions, despite her supervisory role and duty to ensure detainee safety. (*Id*. at 14, 16).

As to Madera County, Plaintiff alleges that officials ignored years of complaints, lawsuits, and grand jury reports regarding bunk safety, and knew its unsafe conditions differ from state prison bunks, which include welded steps. (*Id*. at 5–7). In his supervisory capacity, Sheriff Tyson Pogue ignored these longstanding safety risks associated with top bunk access and failed to train staff regarding safe housing practices. (*Id*. at 8–9).

Plaintiff further alleges inadequate medical care following his fall and revocation of his lower bunk status. (*Id*. at 22–23). He seeks injunctive relief, including, *inter alia*, installation of bunk ladders and appointment of an ombudsman, as well as $1.2 million in damages. (*Id*. at 20–25).

## APPLICABLE LAW AND ANALYSIS

### A. Claims Against Named Defendants

#### 1. Conditions of Confinement

Plaintiff was a pretrial detainee at the county jail when the incident giving rise to his FAC occurred. Therefore, Plaintiff's rights as a pretrial detainee, as opposed to a convicted prisoner, arise under the Fourteenth Amendment rather than the Eighth Amendment, but the standard of review is largely the same. *Castro v. County of Los Angeles*, 833 F.3d 1060, 1067-68 (9th Cir. 2016) (en banc); *see also Mendiola–Martinez v. Arpaio*, 836 F.3d 1239, 1246 n. 5 (9th Cir. 2016) ("Eighth Amendment protections apply only once a prisoner has been convicted of a crime, while pretrial detainees are entitled to the potentially more expansive protections of the Due Process Clause of the Fourteenth Amendment."). "[P]re-adjudication detainees retain greater liberty protections than convicted ones." *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004) (citations omitted). As a pretrial detainee, Plaintiff is protected from conditions of confinement which amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535–36 (1979); *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017–18 (9th Cir. 2010) *overruled on other grounds by Castro*, 833 F.3d 1060.

In order to state a cognizable claim for unconstitutional conditions of confinement related to a risk to safety or health, a plaintiff must specifically plead as follows: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries. *Castro*, 833 F.3d at 1071. With respect to the third element, the defendant's conduct must be "objectively unreasonable." *Id*. (citing *Kingsley v. Hendrickson*, 576 U.S. 389 (2015)).

Although conditions of confinement claims brought by pretrial detainees are analyzed under the Due Process Clause of the Fourteenth Amendment rather than under the Cruel and Unusual Punishments Clause of the Eighth Amendment, the Eighth Amendment's deliberate indifference standard sets the minimum standard of care due to pretrial detainees. *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1120 (9th Cir. 2003). Factors affecting whether a condition is sufficiently serious include is its duration, the attendant circumstances, and nature of the particular deprivation. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

Plaintiff alleges that on January 4, 2015, he fell while attempting to climb into his assigned top bunk in Module "M," which lacked steps, ladders, or other safe access, resulting in injuries to his knees, legs, back, and head. (Doc. No. 15 at 3). He contends that the only available means of access—a plastic chair—was removed by Officers Williams and Yrigoyen pursuant to a November 29, 2024 directive issued by Sgt. Townsend. (*Id*. at 9, 17). Plaintiff asserts that the removal of the chair created an unsafe condition and that the bunk design itself posed a foreseeable risk of injury. (*Id*. at 3–5).

Generally, "injuries inflicted by governmental negligence are not addressed by the United States Constitution." *See Daniels v. Williams*, 474 U.S. 327, 333 (1986) (holding that a correctional deputy's negligent act of leaving a pillow on the jail stairs, which caused an inmate to fall, did not violate the Constitution). In the Ninth Circuit, [m]ultiple district courts . . . have

held that the failure of prison officials to equip prison cells with a ladder or some other safety apparatus to assist inmates in ascending to and descending from bunk beds does not amount to the deprivation of a minimally civilized measure of life's necessities." *Millsap v. Cate*, 2012 WL 1037949, *4 (E.D. Cal. 2012) (cleaned up) (collecting cases).  Moreover, "federal courts in other circuits also universally espouse the view that a ladderless bunk is not a sufficiently unsafe living condition warranting Eighth Amendment protection." *See Thornberry v. Schultz*, 2025 WL 973513, at *3 (E.D. Cal. Apr. 1, 2025) (cleaned up) (citation omitted).  Plaintiff does not allege facts showing that the absence of ladders or the removal of chairs posed a substantial risk of serious harm rising to a constitutional violation under the circumstances. "In light of an almost universal judicial recognition that the absence of ladders or other safety devices in prison cells with bunk beds does not present a sufficiently unsafe condition of confinement," the Court finds that the SAC fails to state a conditions of confinement claim.  *See Millsap*, 2012 WL 1037949, at *6.

### 2. Supervisor Liability

Supervisory personnel may not be held liable for the actions or omissions of their subordinates based solely on a theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.,* 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  Supervisors may be held liable only if they "participated in or directed the [constitutional] violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989*); accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009).  "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales*, 567 F.3d at 570.  Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), *abrogated on other*

*grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

To prove liability for an action or policy, the plaintiff "must . . . demonstrate that his deprivation resulted from an official policy or custom established by a . . . policymaker possessed with final authority to establish that policy." *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th Cir. 2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978).

Plaintiff is unable to sue any Defendant under § 1983 based solely upon their supervisory role because he fails to allege a constitutional violation. Here, Plaintiff asserts that various supervisory officials—including Pogue, Townsend, and Beck—are liable under § 1983 for unconstitutional conditions of confinement. (Doc. No. 15 at 3–4, 6–14). Plaintiff alleges that these Defendants failed to correct known safety hazards and were deliberately indifferent to the absence of ladders or other safe means of accessing top bunks. (*Id*.). However, as stated *supra*, Defendants' alleged removal of the bunk ladders or failure to implement safer alternatives to aid inmates in climbing to the top bunk fails to rise to a constitutional violation. Accordingly, the Court finds that Plaintiff fails to state a claim for supervisory liability.

### 3. Failure to Train

Plaintiff's failure-to-train claim also fails for the same reasons as his supervisory liability theory. An individual supervisory defendant can be liable under a failure to train theory when: "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the [supervisor] . . . can reasonably be said to have been deliberately indifferent to the need." *Clement v. Gomez,* 298 F.3d 898, 905 (9th Cir. 2002) (quoting *City of Canton v. Harris,* 489 U.S. 378, 390 (1989)). The facts must allege that the failure to train was the result of "a deliberate or conscious choice to follow a course of action from among various alternatives." *Id.* (cleaned up); *see also White v. Golden State Eye Center,* 2009 WL 817937, *6 (E.D.Cal.2009) (identifying elements of a claim for failure to train). The supervisor's failure to train must result in the

violation of the plaintiff's constitutional rights to impose liability on the supervisor. *Ybarra v. Reno Thunderbird Mobile Home Village,* 723 F.2d 675, 680 (9th Cir.1984).

With respect to Plaintiff's assertion regarding the removal of ladders or the implementation of safer alternatives to climb bunks, the SAC fails to assert any facts establishing that the need for more or better training resulted in a violation of Plaintiff's constitutional rights. Without a sufficiently pleaded constitutional violation, the Court finds that Plaintiff fails to state a failure-to-train claim.

## B. Claims Against Personnel Not Designated as Named Defendants

Plaintiff explicitly lists Defendants Madera County, Pogue, Townsend, Beck, Williams, and Yniguez as the named Defendants. (Doc. No. 15 at 2–3). In a limited aside located under Plaintiff's pray for relief, he alleges deliberate indifference by jail medical staff, who failed to provide timely treatment following his fall and revoked his lower bunk status. (*Id*. at 22–23).

### 1. Medical Deliberate Indifference

Deliberate indifference to the serious medical needs of an incarcerated person constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Estelle v. Gamble,* 429 U.S. 97, 104 (1976). To maintain an Eighth Amendment claim premised on prison medical treatment, the prisoner must show that officials were deliberately indifferent to his medical needs. A finding of "deliberate indifference" involves an examination of two elements: the seriousness of the plaintiff's medical need (determined objectively) and the nature of the defendant's response (determined by defendant's subjective state of mind). *See McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX Technologies, Inc. v. Miller,* 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). On the objective prong, a "serious" medical need exists if the failure to treat "could result in further significant injury" or the "unnecessary and wanton infliction of pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014). On the subjective prong, a prison official must know of and disregard a serious risk of harm. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). Such indifference may appear when a prison official intentionally denies or delays care, or intentionally interferes with treatment once prescribed. *Estelle,* 429 U.S. at 104-05.

8

If, however, the official failed to recognize a risk to the plaintiff—that is, the official "*should* have been aware" of a risk, but in fact was not—the official has not violated the Eighth Amendment. *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 668 (9th Cir. 2021) (emphasis in original). That is because deliberate indifference is a higher standard than medical malpractice. Thus, a difference of opinion between medical professionals—or between the plaintiff and defendant—generally does not amount to deliberate indifference. *See Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). An argument that more should have been done to diagnose or treat a condition generally reflects such differences of opinion and not deliberate indifference. *Estelle*, 429 U.S. at 107. To prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the chosen course "was medically unacceptable under the circumstances," and was chosen "in conscious disregard of an excessive risk" to the plaintiff's health. *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016).

Neither will an "inadvertent failure to provide medical care" sustain a claim, *Estelle*, 429 U.S. at 105, or even gross negligence, *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1082 (9th Cir. 2013). Misdiagnosis alone is not a basis for a claim of deliberate medical indifference. *Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012). A delay in treatment, without more, is likewise insufficient to state a claim. *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). It is only when an official both <u>recognizes</u> and <u>disregards</u> a risk of substantial harm that a claim for deliberate indifference exists. *Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (en banc). A plaintiff must also demonstrate harm from the official's conduct. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). And the defendant's actions must have been both an actual and proximate cause of this harm. *Lemire*, 726 F.3d at 1074.

Plaintiff alleges that, after his January 2025 fall, he initially received a low bunk chrono, medications, crutches, and an x-ray for his knee. (Doc. No. 15 at 10–11). At some point thereafter, Plaintiff had his lower bunk status revoked. (*Id.*). On June 30, 2025, Plaintiff "reinjured [his back] after having to go up and down from his top bunk again." (*Id.* at 10–11, 22–23). That same day, Plaintiff notified nonparty Officer Perry, who immediately called for

1   medical staff. (*Id*. at 23). On July 1, 2025, Nurse Debbie provide Plaintiff with medication. (*Id*.)
2   The following day, Plaintiff received a back x-ray, a low bunk chrono, a cane, and additional pain
3   medications. (*Id*. at 22–23). Plaintiff asserts that his "bouts of back injuries" could have been
4   prevented had medical staff immediately ordered a back x-ray after his fall and not revoked his
5   lower bunk status. (*Id*. at 23).

6   Here, Plaintiff's allegations do not support a plausible claim of deliberate indifference.
He acknowledges that medical staff responded promptly after his fall, reassigned him to a lower
bunk, and provided pain medication, crutches, and a wheelchair. (*Id*. at 3, 22–23). Plaintiff
further states that he received follow-up care, including x-rays and prescriptions, within days of
reporting back pain due to his reinjury. (*Id*. at 23). These facts undermine any inference that jail
officials disregarded a serious medical need or acted with deliberate indifference.

Plaintiff's remaining allegations—that unnamed staff revoked his lower bunk status—are
vague. He does not identify the individuals responsible, describe the nature or duration of any
delay, or allege resulting harm. *See Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982)
(vague and conclusory allegations are insufficient to support a cause of action). In fact, the SAC
states that when he first reinjured his back, he was provided with his desired care (back x-ray and
lower bunk chrono) within days. Without specific facts showing that any named Defendant
intentionally denied or delayed care with knowledge of a substantial risk to Plaintiff's health, the
SAC fails to state a claim for medical deliberate indifference.

At most, Plaintiff's claims suggest a disagreement with the adequacy or timeliness of care,
which does not rise to the level of a constitutional violation. *See Toguchi*, 391 F.3d at 1057 (a
difference of opinion between a physician and the prisoner—or between medical professionals—
concerning what medical care is appropriate does not amount to deliberate indifference); *see also
Shapley*, 766 F.2d at 407 (a delay in treatment, without more, is insufficient to state a deliberate
indifference claim). Accordingly, the Court finds that Plaintiff's SAC fails to state a cognizable
claim for deliberate indifference to serious medical needs.

**C. State Law Claims**

Plaintiff's SAC alleges that he complied with the exhaustion requirements of the

10

Government Claims Act ("GCA") with respect to his pendent state law claims. Cal. Gov't Code §§ 905, 905.2, 910, 911.2, 945.4, 950–950.2. Under the GCA, a claimant may not maintain a state law tort cause action for damages against a public employee or "local public entity"[2] unless he has first presented a written claim to the state Victim Compensation and Government Claims Board, and the Board has acted on it. *See* Cal. Gov't.Code §§ 900.4, 905, 905.2, 945.4, & 950.2. State law claims are subject to dismissal for failure to comply with GCA. *See Karim–Panahi v. LA. Police Dep't*, 839 F.2d 621, 627 (9th Cir.1988). Plaintiff appears to generally attempt to assert claims of negligence throughout his complaint. (*See generally*, Doc. No. 15). However, the Court declines to exercise supplemental jurisdiction over state law claims where all federal claims have been dismissed. *See* 28 U.S.C. § 1367(c)(3); *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997). To the extent Plaintiff wishes to pursue his state law tort claims, he should file an appropriate action in state court.

**CONCLUSION AND RECOMMENDATION**

Based on the above, the undersigned finds Plaintiff's SAC fails to state any cognizable claim. The SAC suffers from many of the same pleading deficiencies previously identified and explained to Plaintiff in screening the original and amended complaint. Despite being provided with guidance and the applicable legal standards, Plaintiff was unable to cure the deficiencies described above. A plaintiff's repeated failure to cure a complaint's deficiencies constitutes "a strong indication that the [plaintiff has] no additional facts to plead." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (citation and internal quotation marks omitted). Thus, the undersigned recommends that the district court dismiss the SAC without further leave to amend. *McKinney v. Baca*, 250 F. App'x 781 (9th Cir. 2007) (citing *Ferdik v. Bonzelet,* 963 F.2d 1258, 1261 (9th Cir.1992)) (noting discretion to deny leave to amend is particularly broad where court has afforded plaintiff one or more opportunities to amend his complaint).

---

[2] "Local public entity" is defined as "a county, city, district, public authority, public agency, and any other political subdivision or public corporation in the State, but does not include the State." Cal. Gov't Code § 900.4.

11

Accordingly, it is **ORDERED**:

The Clerk of Court shall randomly assign this case to a district judge.

Accordingly, it is **RECOMMENDED**:

The Second Amended Complaint (Doc. No. 15) be dismissed under § 1915A for failure to state a claim and this case be dismissed.

## NOTICE TO PARTIES

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court.  *Id*.; Local Rule 304(b).  The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed **fifteen (15) pages**.  The Court will not consider exhibits attached to the Objections.  To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity.  Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).  A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

Dated:  August 8, 2025

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE